2012-3174. Mr. Ackerman, whenever you're ready, please. Your Honor, petitioner asked that this court reverse the order of the Merit System Protection Board, which held the AJ's decision that the petitioner did not establish board jurisdiction when he accepted a federal career intern program position with the same agency. Furthermore, petitioner asked that the board decision that he forfeited his rights and that his termination was not an adverse action when he entered that position should be reversed and that he should have been afforded due process and board jurisdiction when he was terminated. The petitioner brings three issues. First, primarily, is that he should have been permitted to return to his career status position with full board jurisdiction and appeal rights when he left his position with the same agency as a Customs and Border Protection Officer to take the Immigration Enforcement Agent position. I'm a little unclear. You're saying he should have returned because there are two, I don't know whether they're called agencies or whatever, there's ICE on one side and then there's Border and Patrol or something, some other entity. Correct. First of all, it's the same agency. The respondent has argued that they're different agencies. However, the AJ found in his order that CBP, Customs, Border Patrol, and ICE are within the Department of Homeland Security and they would be considered part of the same agency unless the agency issued an appropriate directive requiring their treatment as separate agencies for EPSA purposes. So is your complaint that he should have gone back to the position from which he came or that he should have been converted into a career conditional ICE employee? One or the other, but that he was left no remedy. The agreement that he entered into with the agency, which is in our appendix at 823, is the employment agreement, states if you had previous competitive status, which he had, you could apply for reinstatement. If you're a current U.S. Immigration and Customs Enforcement employee who held a career conditional employment when you accepted the intern position and you're not converted, you will be placed in a career or career conditional position in ICE. There was no qualification there. It states you will be returned to your former position. Mr. Scull accepted this F-CIP position with the understanding and the agreement, both at 823 and 824, that he was not giving up his career rights. He was a four-year federal employee. He's a veteran, veteran preference eligible. He never was told he was going to give up his rights. Let's assume you're right that that letter gave him an entitlement or an expectation, at least a reasonable expectation of being returned to a career position. Where does that play into the MSPB's jurisdiction to enforce that? The MSPB's decision was that he could be terminated from the F-CIP position summarily. Right. The board should have considered his ability to return. The board ruled... I understand that's your argument, but my question is, where does the board get jurisdiction to enforce what amounts to a contract, if that's what it was, to return him? Let me ask the question. I take it that you would not disagree that if someone clearly engaged in misconduct during their internship and then the internship was terminated halfway through, that would not be a removal that would be subject to board jurisdiction, correct? Correct. All right. What is it about this side agreement, if that's what it is, that gives the board jurisdiction over this case? Well, Mr. Scull was not terminated... I understand, but I'm focusing now, let's assume he had been terminated, but he still had this side agreement. What is it that would give the board jurisdiction, or would the board have jurisdiction to enforce the side agreement? They very well might not have jurisdiction to enforce the side agreement. So the side agreement doesn't really change the board jurisdiction analysis at all, right? In your scenario, it doesn't, but he completed his two-year term. But isn't that a way of saying that your whole argument depends on your prevailing on the part of your argument in which you say that he completed his term, and therefore he was in a different position from somebody who had been terminated for misconduct during the term. Yes. I.e., if you fail on that, the side agreement doesn't help you with respect to board jurisdiction. Isn't that correct? Yes. However, Mr. Scull completed a two-year term... I understand, but now you're on to that argument, which is the core argument. Yes. All right, I understand. And so he's at this point, he completes his two-year term, and our argument is that Mr. Scull should have been given one or the other. He should have been given adverse action appeal rights, which the board found in remanding that his termination was not an adverse action. And that's why they shifted the burden to Mr. Scull, and they said they would have accepted the jurisdiction if he could prove that he was removed for conduct, unrelated to conduct. And because Homeland Security claims he was removed for conduct, he lost everything. He lost his adverse action appeal rights, and he lost his ability to return to his former position. So your argument, going back to Judge Bryson's point, sort of what you're left with is the timing in which... So your position is, because they let him kind of complete his two-year internship, then that was the problem. If they had fired him for misconduct, three days before his internship was completed, would then it be clear to all of us that the board didn't have jurisdiction? I believe it would be a different argument. But the facts are he was terminated on the day, the last day. We actually had an argument earlier on that he wasn't even served on time, but that went away. So he's terminated at the end. The paperwork that he was terminated on is SF-50, the personnel action states terminated at the end of the probationary period. And everything speaks to him being terminated at the end of a two-year probationary period. I'm sorry. The end of his two-year term. So if it had been the day before, then it would have been different. It may be important for us to know how different it would have been. Would you think that in that setting, he would not have board jurisdiction? Well... Because we're not necessarily going to agree with you that the termination was at the very end, because the government's arguing to the contrary. So if we treat this as a termination that occurred prior to the very end, i.e. 5 o'clock quitting time on the April 14th or whatever it was, is there no jurisdiction if you're wrong about that? Well, the petitioner would still argue that he had the right to return to his former... Under the contract? Under the employment agreement. But I think we've agreed already the contract doesn't give him board jurisdiction. So would the board have jurisdiction if, as in Judge Prost's example, he had been terminated three days before the... I think it would be different if... It's different, but I really want you to tell us how you think the board would have jurisdiction on this, because we may have to decide that question, so we need your guidance. Correct. The board jurisdiction under the F-CIP program, he would not have board jurisdiction if he was terminated during his two years. The termination date is the anniversary date of his two years. So their whole argument depends, then, on his having completed the internship. Correct. Okay. The other issues that that petitioner raises, which are sort of tangential to his primary issue, are that he was not given notice of giving up his career rights. And that would give him board jurisdiction, too. The board cases have said that an employee has to be given notice when he gives up his rights. Mr. Scull was not given any indication that he was giving up all his career rights when he accepted the F-CIP position. And so we would argue that board jurisdiction would kick in there, because he would have still retained his career rights had he not... But if the board had jurisdiction, jurisdiction over what? Over whether or not the misconduct was sufficient to warrant a termination? Over the conversion? Over the termination. Had he been a career employee and was terminated under these terms, he would have clearly been afforded due process, a proposal, an opportunity to respond. He lost all that. And one of the reasons he lost it was because he wasn't given notice that he was losing those rights. And so that would give board jurisdiction as well. Now, on the notice question, is it the case that under the board's cases that you have to be given notice that you are being moved, let's say, to an accepted service position from a competitive service position, is that sufficient or do you need to be told all of the various consequences that flow from being in an accepted service position? And there are several, including board appellate jurisdiction under certain circumstances. The board case law is that a petitioner, an appellant, has to be advised he's forfeiting his appeal rights. Just stating you're going to an accepted position isn't necessarily telling someone what they're forfeiting. Even though, in many circumstances, that is the principal consequence of moving to an accepted service position. That is a consequence. However, I believe the board case law, not this court, would say that notice is a requirement to forfeiting your rights. And the remedy, the relief for that, then, is? That he retains his federal career rights and that this would be treated as an adverse action with due process rights. Okay. Why don't we hear from the government? Thank you. May it please the court, in this appeal, Petitioner Mr. Scull has advanced four arguments in his papers, I guess three here this morning. The most important of his arguments is the claim that the board had jurisdiction to entertain his appeal. The only route to jurisdiction over the decision to convert an FCIP intern, like Mr. Scull was, to a permanent position at the end of his internship is the narrow one provided by 5 CFR 213-3202. And most importantly, for our purposes, this route requires Mr. Scull to show that his failure to complete the internship successfully was for reasons unrelated to misconduct. The board explained that to do this, Mr. Scull must show that the agency's proffered reasons for his non-conversion was not the real reason for the agency's decision. I'm a little confused about the regulation and how it plays here. So you're saying you don't have jurisdiction if he's removed for misconduct or something else, right? The board does not have jurisdiction if he was removed for misconduct. So what does it have jurisdiction of? I mean, it might have jurisdiction if he was removed for performance. So you're saying during this internship program, the board has jurisdiction over performance related charges, but not with respect to misconduct. That's my understanding. I'm just wondering how that distinction is drawn. I mean, under the way the statute works, as I understand, you're either an employee and you've either, you know, action has been taken against you and the action taken against you is either misconduct or performance related. I don't know who else gets to draw the distinction between we can put misconduct cases on one end and poor performance cases on the other and the board can decide whether, you know, where it gets jurisdiction. Where is it in the statute that gives the board or the government the basis for saying they have jurisdiction over performance but not over misconduct with respect to these particular positions? I don't know that there's... I don't know that that's exactly outlined in the statute, but the regulation is fairly clear that that's a requirement and... Yeah, but you think the regulation can confer jurisdiction or take away jurisdiction that  Or doesn't exist under the statute? Well, in terms of the internship program, which is created by executive order, I believe, and regulation, it seems that it should be able to define its own terms as to when the when the board would have jurisdiction. Well, that... It's true that the statute that gives the board jurisdiction refers to jurisdiction that is given by statute or regulation. So, you know, that's why OPM can promulgate regulations that give the board jurisdiction over certain things. But as I read 213-3302, it did not appear to address board jurisdiction at all. So I have the same question that Judge Post does, which is, if he's an employee, and I position for more than one year in the same agency, right? And he's preference eligible. So he's an employee, right? We have that much. Yeah. Then the question is, if he's an employee, why doesn't the board have statutory jurisdiction under Chapter 75? And the answer to that, that I take it that you would give is to say that he has not been removed if he is taken out of the internship program. Is that right? I think that's right, Your Honor. All right. But I take it you would say that he has been removed if he were taken out of the program for a reason that isn't authorized by the regulation. Is that right? I think that's right, Your Honor. Which is peculiar. I mean, maybe this is right, and there doesn't seem to be much law on this. But what it seems to suggest is that if you have two people, one of whom... One of whom is taken out because of misconduct. The other of whom is taken out, as you said, because of poor performance. The one who is taken out because of poor performance would be deemed removed, and the other one wouldn't. Is that the government's position on jurisdiction? I think that's what the board has found. Yes, Your Honor. It strikes me as peculiar. I take it there's no regulatory or statutory help on this. This is just... The board came to that conclusion? I believe... Yes, Your Honor. I believe that's right. All right. This depends, as I understood it, on the idea that the position that he voluntarily signed up for at the beginning of this two-year stint with the FCIP was a position that by definition came to an end under certain conditions. And if it comes to an end under those conditions, then there's no adverse action. That was what I understood the theory to be under which the regulation tried to embody and that the employment agreement probably embodied as well. Does OPM have, or the President's Executive Order, have a general power to define positions with ending points and thereby essentially to remove them by voluntary, by an employee's voluntary signing up for such a position, remove them from the adverse action? I'm not aware of a reason why they wouldn't have that ability, Your Honor. Now, in arguing that the board has jurisdiction, Mr. Scull has relied on contemporaneous emails from the... Two documents, a contemporaneous email from the agency, which he argues shows that at the time of its termination, there was no mention regarding misconduct. Far from supporting his claim, the very email upon which Mr. Scull relies demonstrates that the misconduct was the basis for his non-conversion. The attachment forwarded by the same email gave the same explanation as Mr. Phillips, that Mr. Scull was not candid and failed to report that he'd caused damage to someone else's property during the accident and indicated that he would not be converted because these actions did not meet the standard of conduct for law enforcement officers. So the other document he referred to is SF-50, which doesn't state that he wasn't removed for misconduct, so apparently he's making an argument that an affirmative statement was required and there's no authority for that proposition. So neither of these documents assist Mr. Scull in his effort to establish jurisdiction. Mr. Scull's second argument is that he's entitled to be returned to career positions based upon his employment agreement. This argument fails for three reasons. First, the parties cannot confer jurisdiction by agreement, I think as the court noted earlier. But apparently they can remove jurisdiction by agreement, which I think is the whole theory of this program, that by agreement at the outset of signing up with the FCIP, he had obtained an employee in a position that terminated of its own force, so that when it came to an end, for particular reasons, there was no adverse action. Why is it any odder to have an elimination of board statutory jurisdiction by agreement than the conferral of board jurisdiction by agreement? Well, I think the agreement was part of this internship scheme, and I think it is a different thing to give up rights by agreement than to try to convey rights to a third party, a tribunal, to adjudicate something by agreement. I don't think it's ordinary to think that two parties can create something for a third entity through their two-party agreement. Could I ask you to focus on the question that your opposing counsel focused on with respect to the timing of the termination? Now, I take it the last day of his two-year internship, as these things are calculated, would be April 14, 2009, is that right? I believe that's right. Started on the 15th, 2007, so the 14th would be the last day. Right. So if he gets to closing time on the 14th, then he has completed the internship, right? Yes. Right. Now, what is it that tells us that he didn't complete the internship? We have a letter, which I think is at J.A. 34, or I guess it's your red appendix, 34, which was sent to him on the 14th. Is it your position that that letter was sent during the course of the day and had the effect of immediately terminating his internship? Or did that letter announce to him that his internship would be terminated at the end of the day? And does it matter? Your Honor, I think that letter and multiple other contacts were made during that day and they were intended to terminate his internship immediately. In Snatter, as opposed to at the end of the day? Well, as opposed to after he had finished the business day. Well, but presumably he'd finish at the end of the day. Where I'm going is, obviously, I'm trying to see whether they decided, oh, we're going to go ahead and let you finish. But we're not going to place you back in your former position or any equivalent. Versus, we're terminating the internship during the course of the internship as opposed to letting you finish. Which do you think the record indicates this was? I think the record indicates that there was a very deliberate intention to terminate during the course of the internship. I'm not understanding. Just so you can have this, I'll let you finish. The subject letter of the letter is notice of non-conversion. The lead-up is, it doesn't say we're terminating your internship on the last day. It said, we've decided not to convert your position to a career or conditional position. Right? I guess that is what it says. But I think it may not have made it into the appendix, but in the record there is, the record shows various email discussions between the agency, and it's clear, between different people in the agency, and it's clear that what they are trying to do is end this internship before Mr. Scull is entitled to additional rights. And that's their intention. I think they also notified him by various phone calls. Perhaps the language in the email that they sent him wasn't perfect in terms of its precision and what it was trying to accomplish, but I think the intention was clear that they wanted to notify him that he wasn't going to have another position, and that he was terminated immediately, and they were trying to get him noticed as soon as they could. He was out on vacation that day. Do you know if he would get paid for the full day? I do not know that, Your Honor. Well, I'm really having trouble with your answer, apparently. If you look at page 34, it's in your appendix, the letter to which I think Judge Bryson is referring. It's dated April 14th, and at the end of paragraph 3, what it says is your accepted service appointment expires effective April 15th, 2009. So if April 14th, 5 p.m. is the trigger, they're saying it's effective the following day. They're not... Are you saying that... I mean, if they had said it's effective April 14th at 9 a.m., I understand you saying it was effective before... So I'm not really understanding how you're saying that the termination was effectuated while he was still serving in the internship program on April 14th. Do you understand my question, or am I misunderstanding the point that you're making? I do understand the point the court is making. I think that... their intention was certainly to terminate him before he accrued any rights. Right, but if he automatically accrued rights, if he completed the internship, notwithstanding their intention that he not, then their intention perhaps was not adequately effectuated because they allowed him to complete the internship. I mean, suppose they had said, we read the regulation incorrectly to suggest that even after you complete your internship, sometime within a week thereafter or before you begin your next job, we can terminate your rights to that job. They'd be wrong, right? And he'd have the right to that job, or at least he'd have the right to a board hearing on termination. Right? I mean, I'm right about that, am I not? I think at the end of his internship, he had the right to be considered for additional employment except that if he was a current member of ICE when he signed the agreement, they had promised him a new position, but I don't think he was necessarily. So is it the government's position that even if he were terminated the day after, even if the internship expired, and then he said, where do I go next? And you say, you go nowhere next, you're done. Is it the government's view that he does not have, he would not have board jurisdiction, he has no rights because he has no rights to another job? I mean, are we back to sort of the employment agreement and the right to be converted? I'm just having a hard time understanding this. This isn't a trick question. Yeah, I understand, Your Honor. Mr. Scull had not really raised any issue about the timing of the notice in this round of this proceeding, and so it's not something we had given much thought to. Well, just in general, if you go into this program and you're not from ICE, because you say that for ICE you have more rights if you came from ICE and went into this internship, right? Even if you're from some other division? You seem to at least have arguably some rights. You can make an argument that you have some rights under the employment agreement, or whatever that's worth. Okay, but is the government's position that this has little to do with when he was terminated or whether he was terminated for misconduct or just because people didn't like him, once his internship expired, he's out the door unless somebody decides to pick him up for another position? So he has no MSPB rights with regard to the conclusion of the termination of the internship and the non-acceptance for another job? Is that the government's view? I mean, I just don't even know what we're talking about. No, Your Honor. I think there is a distinction. I felt that the government had met its deadline in terms of ending his internship in time. And that was an argument that he had raised early on in the proceeding, but it's not an argument that he has made to this court. And I think if he doesn't make that argument in his opening brief, at least he's considered to have waived that issue. So it's certainly not something we focus on for that reason. I'm sorry that I haven't given it more thought. Well, what if we conclude that we don't agree with you on the termination point, that we think that his termination, that he was allowed to at least sit through the conclusion of his two-year internship? Is it the government's view that the MSPB nonetheless has no jurisdiction? We've got to know the answer to that, because we might end up having to decide that. Yeah. I mean, I would think that, first of all, what comes to mind is, having seen case law about errors, if the government makes some sort of error in paperwork, is that determinative? If they make an error on an SF-50, for example. And I think they've been allowed to show that they've stated something erroneously. I think here it's clear that their intention was to terminate him before he accrued any rights to any further employment. At the end of his internship, they made great efforts. The record reflects emails between them and, I believe, their legal department, trying to figure out when they needed to do this. He was out for that day. And so they emailed him. I believe they called his girlfriend. They tried to make very clear that they were terminating him before any rights accrued to him. And so I think that was the government's intention. And he was given adequate notice. I think he understood that notice. I think there was never any sense that he didn't understand what the government was trying to do. But what I'm not understanding is. There was a dispute at one point about whether they needed to serve him in person that day. And he made that argument before the administrative judge in the first round of this administrative process. And then he was ruled against in that argument. And he did not pursue it any further. Would you characterize him as having completed the internship? No, Your Honor. And what part of the internship was left uncompleted? I think once all these efforts at notifying him, whether he first heard a voicemail or received an email or whatever, I think after that time, he was no longer supposed to be going forward with his internship. Not supposed to be going forward. If, for example, I am told that I am terminated as of June 30. Presumably, I'm expected to work until June 30. And if I just say, no, I've been terminated and walk off, then my employer has a complaint. I'm terminated as of June 30. He was terminated as of the end of the day on April 14. The letter does state, I mean, I can't argue with what it states, what you're saying, but I think the intention was certainly to terminate him within the internship. He was out that day, and I think that may have confused the way the letter was written or made it less precise, because they knew he wasn't in the office that day. He was on vacation. On vacation? Or he was actually on administrative leave? Well, he was on leave. He was on administrative leave at one point, but I believe the record shows that he had asked for some sort of additional leave, so he may have returned from administrative leave. I think there's something in the record that indicates his supervisor was unaware that this was going to happen, or whoever approved his leave was unaware that this was going to happen, so he actually did ask for leave for that day. So just to be clear, though, if we disagree with the timing, your view is he does have rights, and if so, what are those rights? Rights to challenge the misconduct? Rights to challenge whether or not he should have been put in another position? I think if he disagrees with conduct, he does have different rights, and I'm not sure exactly what they are, because this timing argument really wasn't developed in this appeal, and I'm not sure exactly what his rights would be. All right. Well, we thank you. We've gone over, but that was our hope in that area. Thank you, Your Honor. All right. If you need it, you have three minutes left, and your friend, we had her go over about eight minutes, so we'll be pretty generous if you think you need it for about five. We'll see. Well, I think the government is being a little disingenuous when they say they intended to terminate him. This accident was in February. The termination, the F-SIP, ended April 15th, so it is February, March. It is three months. You really want to say April 14th? I'm sorry, April 14th. The notice of personnel action I'm looking at here is April 15th. But the government didn't get the letter from Farmers until, was it April 2nd? April 2nd. So still, so still, you know. And they let him stay. Correct. So it's clear they didn't intend to terminate him because they still had two weeks. So to say they're scrambling around on the last day. Can I ask about this waiver point? Sure. I don't read the headings, at least, of your brief, and I haven't gone back to check the content because I wasn't really aware that you said everything about whether there was misconduct is really not relevant here because he simply completed the FCI. Correct. I don't see the argument. Oh, in here? Yeah. He completed it. Whether he, that has nothing to do with whether there was misconduct or not. He may have been denied conversion because of misconduct, but I don't see the argument that says he in fact completed the internship. Tell me if it's here. Well, it's not here because the board and the government have always argued that it was irrelevant, that he was going to be terminated, he was just being terminated. It didn't really matter. But you have not argued to us that he was in fact not removed prior to the successful completion of his internship, which is the argument on which the timing issue really... We did make that to the board and the board rejected that. But you haven't made it here. I have not. Okay. So, but I would present here that it was clear that he completed the F-CIP program. He was paid that final day. The government had at least a couple of weeks when they had all the information they needed and chose not to, they chose to wait till... And the paperwork shows that he was terminated at the end of the F-CIP. And I think your honors reached the significant point with agency counsel that what would have happened? They don't even know. I mean, would they have the right to terminate him anyway? And we would submit that no, he had the right to return to his former position. Mr. Scull was a decorated Marine. He served four years. But if they didn't put him back in his prior position and we don't conclude that they have jurisdiction to do that, I mean, the case is over then too, right? Meaning the board wouldn't take jurisdiction. Well, we contend that the board should have had jurisdiction in either event. Either he was terminated after completing the F-CIP or he was put back into his other position and terminated. I mean, something had to happen on that date, on April 15th, and instead they just said you have nothing. You can't argue about the misconduct. The board said it's not an adverse action. The board said you don't have the right to appeal based on adverse action rights because it's not an adverse action. So he's put in this limbo by the board of being in a position where he can't go back, which he should have been allowed to do, and he can't stay in because they're just ending him. And so we're asking this court to find a remedy and to remand it to the board, saying they have jurisdiction over it as an adverse action, which they've said they don't, or saying they have jurisdiction because he should have reverted back to his old position on that date if he wasn't kept. So unless the court has other questions, I just would submit that Mr. Scull was placed in this no-man's land that the Congress didn't intend when they started the F-CIP. The last issue which didn't really come up in any way, which I raised in my brief, is the Dean holding from the board that found F-CIPs are violative of veterans' rights and violative of civil service regulations, and so the F-CIP is no longer in favor. It's a disfavored program. I don't think it exists. It doesn't exist anymore. It doesn't exist anymore. It's been replaced. Through executive order, it was abandoned because of the Dean holding, and I understand the government's argument is that Scull is not in the same position. He wasn't a veteran applying for a job, but my argument was he too was harmed by the F-CIP, which made him take that job through an intern program when, as a veteran with preference-eligible rights, had they posted it, he would have been able to apply for that job and get the better position, but he was forced to relinquish his old position, even though he was a veteran with all these rights, and enter an F-CIP program, which turned out to be not such a good program. Thank you.